**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| JOSEPH VAVERCAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:14-CV-74-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Joseph Vavercan

on March 5, 2014, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the

Commissioner of Social Security [DE 14], filed on July 30, 2014. The Commissioner filed a

response on October 17, 2014. Plaintiff filed a reply on November 6, 2014.

**PROCEDURAL BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income

on April 1, 2011, alleging a disability onset date of July 16, 2006. His claim was denied initially and

upon reconsideration. Plaintiff timely requested a hearing, which was held on July 5, 2012 and

presided over by Administrative Law Judge (ALJ) Henry Kramzyck. Present at the hearing were

Plaintiff, his attorney, and an impartial vocational expert. After the hearing, the ALJ requested a

consultative examination of Plaintiff. Plaintiff did not object to admission into evidence of the report

from this examination.

On September 6, 2012, the ALJ issued a written decision denying Plaintiff's claims for

disability benefits and supplemental security income, making the following findings:

  1.   The claimant meets the insured status requirements of the Social Security Act
       through September 30, 2009.

2.     The claimant has not engaged in substantial gainful activity since July 16, 2006, the alleged onset date.

3.     The claimant has the following severe impairments: right shoulder osteoarthritis, obesity, degenerative disc disease of the lumbar spine, anxiety, and psychotic/delusional disorder.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), in that he can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds, and can sit for a total of six hours in an eight-hour day, and stand or walk for a total of six hours in an eight-hour day, with normal breaks, except: the claimant can never climb ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs; the claimant is able to understand, remember, and carry out short, simple, repetitive instructions; the claimant is able to sustain attention/concentration for 2-hour periods at a time, and for eight hours in the workday on short, simple, and repetitive instructions; the claimant can use judgment in making work decisions related to short, simple, and repetitive instructions; the claimant requires an occupation with only occasional coworker contact and supervision; the claimant requires an occupation with set routines and procedures and few changes during the workday; the claimant could have only superficial contact with the public on routine matters; the cla[i]mant cannot perform fast-pace production work; and the claimant can maintain regular attendance, can perform activities within a schedule, and be punctual within customary tolerances.

6.     The claimant has no past relevant work.

7.     The claimant was born [in 1964] and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 16, 2006, through the date of this decision.

(AR 21-33). Plaintiff then sought review before the Agency's Appeals Council, which denied his request on January 18, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On July 16, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

# DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is

not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits or, alternatively, remand for further proceedings. In support of the requested relief, Plaintiff argues: (1) the ALJ's assessment of Plaintiff's credibility relies on improper factors, (2) the ALJ gave improper weight to medical opinion evidence, and (3) the ALJ's RFC determination lacks evidentiary support. The Court considers each argument in turn.

### A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)　　The individual's daily activities;
(2)　　Location, duration, frequency, and intensity of pain or other symptoms;
(3)　　Precipitating and aggravating factors;

| (4) | Type, dosage, effectiveness, and side effects of any medication; |
| (5) | Treatment, other than medication, for relief of pain or other symptoms; |
| (6) | Other measures taken to relieve pain or other symptoms; |
| (7) | Other factors concerning functional limitations due to pain or other symptoms. |

*See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff presents three arguments in favor of finding the ALJ's credibility determination regarding Plaintiff's mental impairments "patently wrong": (1) the ALJ incorrectly decided that Plaintiff's discussion of obtaining disability benefits during therapy sessions compromised Plaintiff's credibility; (2) the ALJ erred in considering Plaintiff's previously denied applications for Social Security benefits in the credibility determination; and (3) the ALJ impermissibly made a negative inference from Plaintiff's refusal to comply with treatment without considering Plaintiff's explanation for his noncompliance. The ALJ determined that these three factors, along with Plaintiff's "poor work history with no clear significant gainful activity level earnings," "suggest that the claimant is seeking treatment to establish disability as opposed to therapy." (AR 30). This

suggestion and the ALJ's observation of Plaintiff's demeanor and concentration at the administrative hearing are the reasons given for the ALJ's credibility determination as to Plaintiff's mental impairments. (AR 30). The Court addresses each of Plaintiff's arguments below.

Plaintiff first argues that the ALJ provided no logical bridge between Plaintiff's discussion of his applications for disability benefits during his therapy sessions and the ALJ's conclusion that this compromises Plaintiff's credibility. The ALJ implies that discussion of Plaintiff's applications in therapy sessions is an indication of Plaintiff's dishonest motivation for treatment. The Commission supports the ALJ's reasoning, suggesting that time spent in therapy discussing Plaintiff's application is time not spent on his mental symptoms and their functional effects. However, symptoms and their effects need to be placed in context, and Plaintiff's context at the time of the discussions included his pending disability benefits applications.

In Plaintiff's treatment plan, one stated objective was to resolve outstanding issues with his Social Security case; however, there are ten other objectives listed. (AR 433-36). The record indicates that, while Plaintiff had skills development sessions with the specific goal of helping him with his ongoing Social Security application,[1] *see, e.g.*, (AR 328, 335, 337, 340, 342, 344-45, 347-48, 351-52), the discussions in Plaintiff's individual therapy sessions were on a broad range of topics, including his pending Social Security applications, *see, e.g.*, (AR 330, 332, 334, 339, 349-50 353-54). For example, in Plaintiff's individual therapy session on March 5, 2012, the discussion included problems with pain and sleep, issues with getting medication, a review of coping skills, his upcoming Social Security hearing and types of Social Security benefits, and fishing. (AR 354). In

---

[1] Notably, it appears from the record that these sessions were begun upon the recommendation of Social Worker Ruth Dekker, who was Plaintiff's therapist. (*See* AR 379-80 (reporting that Dekker felt her only way to help Plaintiff with his ongoing issues with the Social Security process was "to refer him to Aftercare and have a [Case Manager] work with him to attempt to secure Medicaid and SSDI/SSI.")).

fact, some session reports do not mention any discussion of the Social Security application process. *See, e.g.*, (AR 334, 367, 372-73).

Furthermore, to the extent obtaining disability benefits was discussed in both the skills development and individual therapy sessions, the ALJ provided no explanation as to how this suggests treatment was sought to "establish disability." (AR 30). The goal of psychotherapy is to assist patients with developing coping skills and handling difficult situations through learning about moods, feelings, thoughts, and behaviors.[2] The focus in Plaintiff's mental health treatment was on providing him with the tools to cope and function in light of his ongoing disability benefits application process. Even in regard to the skills development sessions focused on Plaintiff's pending Social Security applications, there is a marked difference between having an objective of "obtaining disability benefits" and "establish[ing] disability." *Id.* "Obtaining disability benefits," as an objective for Plaintiff in his treatment plan, involved working through documentation, (AR 340), going to hearings, (AR 351), and working on Plaintiff's interpersonal skills in order to successfully retain an attorney, (AR 348). As the ALJ uses it in addressing Plaintiff's credibility, "establishing disability" insinuates going to therapy to create a false record of a non-existent impairment. The treatment records do not support this insinuation. The ALJ has not provided a logical bridge between Plaintiff's efforts in therapy to develop the skills to function as a Social Security claimant and the conclusion that it was done to "establish disability." *See Giles*, 483 F.3d at 487 (quoting *Scott*, 297 F.3d at 595)); *see also Lakes v. Astrue*, No. 11 C 3592, 2013 WL 623022, at *8 (N.D. Ill. Feb. 19, 2013) ("[I]t is unclear how a focused, even, 'obsessive,' desire to obtain benefits makes a claimant's disability claim more or less likely to be true.").

---

[2] *Psychotherapy*, Mayo Clinic, http://www.mayoclinic.org/tests-procedures/psychotherapy/basics/definition/prc-20013335 (last visited Sept. 29, 2015).

Plaintiff next finds fault with the ALJ's consideration of Plaintiff's previously denied applications for disability insurance benefits in determining Plaintiff's credibility. Before the instant applications, Plaintiff had been denied disability benefits twice. (AR 30, 45). The first application denial contains no record of alleged mental impairments, (AR 110-16), meaning that Plaintiff's allegations of mental impairment have been addressed only once before, in the second application, *see* (AR 87-103). In that previous decision addressing Plaintiff's mental impairment, there was no evidence that Plaintiff suffered from delusions, (AR 90), but, in the decision in the instant case, the ALJ found Plaintiff to have psychotic/delusional disorder, (AR 21). To draw an inference from a previous denial of benefits that treatment was sought in order to "establish disability" and to also find an additional severe impairment supported by the record of that treatment is incongruent. The ALJ's acknowledgement of the additional impairment indicates that Plaintiff had a legitimate reason for filing again. This therapy identifies and treats a diagnosis that the ALJ accepts and that was absent from the previous benefit denials. Additionally, a negative inference drawn from treatment sought after a denial of benefits places a claimant seeking to remedy an evidentiary deficiency in an impossible position: how can this claimant build a record documenting his or her condition if treatment will be counted against his or her credibility? The ALJ failed to present a logical bridge that connects the previous denial to the credibility determination.

Plaintiff's final argument regarding the ALJ's credibility finding regarding mental impairments is that the ALJ erred in discrediting Plaintiff's credibility due to noncompliance with treatment without considering Plaintiff's explanation for that noncompliance. The Commission concedes, and the Court finds, that "Plaintiff's refusal to take psychotropic medications, without further analysis, is not a firm basis for a credibility assessment." (Def. Resp. Br. 22); *see also* SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their

functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."). The Commission contends that, regardless of this error by the ALJ, there is substantial evidence in support of the ALJ's credibility decision, so it should be upheld. Here, the Court disagrees with the Commission.

In arguing that substantial evidence supports the ALJ's credibility determination regarding Plaintiff's mental impairments, the Commission offers several pieces of evidence the ALJ considered in make a determination of Plaintiff's credibility regarding his *physical* impairments. However, there are only five supporting pieces of evidence given by the ALJ in support of his credibility determination with regard to Plaintiff's *mental* impairments: (1) noncompliance with treatment, (2) discussion in therapy of obtaining disability benefits, (3) previously denied applications for Social Security benefits, (4) poor work history, and (5) the ALJ's observations of Plaintiff's behavior at the administrative hearing. (AR 30). The three errors noted above undermine the ALJ's credibility determination regarding Plaintiff's mental RFC, and the remaining support given is insufficient to overcome the flaws. The ALJ's credibility determination regarding Plaintiff's mental RFC is "patently wrong" and requires remand.

## B. Medical Opinion Evidence

Plaintiff asserts that the ALJ improperly weighed the medical opinion evidence of treating psychiatrist Dr. Prakash Varghese and of consultative examiner Dr. Irena Walters, a psychologist. An ALJ is required to evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id.* §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

Dr. Varghese is a treating psychiatrist, so the ALJ must give his opinions controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). However, courts have acknowledged that a treating physician is likely to develop a rapport with his or her patient and may be more likely to assist the patient in obtaining benefits. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives good reasons. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schaaf*, 602 F.3d at 875. The ALJ cannot pick and choose the evidence that favors his final decision; rather, the ALJ must articulate his analysis well enough for an appellate court to follow and review his reasoning. *Diaz*, 55 F.3d at 307.

Plaintiff first alleges it was error for the ALJ, in giving Dr. Varghese's opinions only light weight, not to explain his consideration of the regulatory factors contained in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While the ALJ must consider the regulatory factors, there is no

requirement for the ALJ to explicitly discuss each factor in the decision so long as the ALJ adequately provides good reasons for according the opinion the weight given. *See, e.g.*, *McCormick v. Astrue*, No. 11-CV-0328, 2012 WL 1886508, at *12 (N.D. Ind. May 23, 2012); *Brown v. Barnhart*, F. Supp. 2d 773, 792 (E.D. Wis. 2004).

Regarding the adequacy of the ALJ's explanations, the Court separates Dr. Varghese's two challenged opinions. The first opinion is that Plaintiff has marked restrictions in concentration, persistence, or pace, which the ALJ gave little weight. The ALJ explained that he did so because Dr. Varghese does not clarify his reasons for the opinion and because the treatment records do not support it. (AR 25). The ALJ notes that the treatment reports do not discuss difficulties in concentration or memory–only delusions–, that testing indicated intact memory, that a treating neurologist found intact memory and concentration, and that the ALJ personally observed Plaintiff to have only mild concentration difficulties and no memory problems at the administrative hearing. *Id.* The ALJ has provided a sound explanation for giving this opinion little weight.

The second challenged opinion is that Plaintiff would miss more than four days of work per month. The ALJ also gave this opinion little weight and supported this decision by noting Plaintiff's GAF scores of 50-55, which "are not consistent with inability to concentrate or to work"; Dr. Varghese's failure to explain his opinion; and Dr. Varghese's opinion that Plaintiff is able to handle his benefits, if awarded. (AR 31). The ALJ further supports his determination that Plaintiff would be able to have regular work attendance with the following evidence: Plaintiff has had no inpatient treatment for psychosis or delusions, Plaintiff refuses to take medications, and Plaintiff's impairments for which he receives counseling does not preclude unskilled work. (AR 32).

Plaintiff alleges several errors regarding the given reasons. While Plaintiff does not dispute the validity of using his GAF scores in according weight to this opinion, he does argue that his

scores support Dr. Varghese's opinion. A score of 50 indicates serious symptoms or serious impairment in occupational, social, or school functioning, while scores of 51-55 indicate moderate symptoms or impairment. Plaintiff also argues that the ALJ should not use the lack of explanation of the medical opinions to discount the opinions because the form used to provide the opinions does not ask for explanations. Plaintiff further contends that Dr. Varghese's treatment notes are consistent with his opinions. Finally, Plaintiff asserts the ability to handle money is not inconsistent with Dr. Varghese's opinion that Plaintiff would miss four days of work per month. The ALJ's explanation here is not as sound as his explanation for the first opinion, and on remand the ALJ is directed, if he uses the same reasons for according weight to Dr. Varghese's work attendance opinion, to address the different levels of functioning the GAF scores place Plaintiff within, to more fully explain how the ability to manage benefits is inconsistent with the medical opinion, and to expressly consider Plaintiff's explanations for refusing to take medication. The Court further directs the ALJ, if he is unable to discern the medical support of a treating physician's opinion, to "solicit additional information to flesh out [the] opinion." *Barnett*, 381 F.3d at 669 (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).

Plaintiff also alleges a fatal inconsistency in the ALJ giving great weight to Dr. Varghese's opinions that Plaintiff's impairments produced mild limitations in activities of daily living and moderate limitations is social functioning, (AR 24), but only giving little weight to Dr. Varghese's other opinions, (AR 25, 31). However, SSR 96-5p clarifies that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." 1996 WL 374183, at *4 (July 2, 1996). The ALJ has the discretion to accord different weight to Dr. Varghese's different opinions, and there is no error here.

Plaintiff next argues that the ALJ erred in giving little weight to the opinion of consultative examining psychologist Dr. Walters. Because Dr. Walters is a consultative examiner, the ALJ can discredit her opinion if a later reviewer gave a contrary opinion or if there is other compelling evidence. *Beardsley*, 758 F.3d at 839.

Dr. Walters opined that Plaintiff suffered moderate to marked restrictions in social functioning and marked restrictions in responding appropriately to usual work situations and to changes in a routine work setting.[3] (AR 31). The ALJ gave Dr. Walters's opinions little weight, noting that it was not a longitudinal assessment of Plaintiff's functional capacity but rather was a snapshot of functioning in July 2012 and because the GAF score of 60 that Dr. Walters assigned Plaintiff was inconsistent with the limitations that she proposed. (AR 31). Plaintiff argues that the reasons provided fail to give a sound explanation for giving the opinions little weight. However, the regulations require the ALJ to consider the length of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). It was mandatory for the ALJ to consider that Dr. Walters's opinion was only based on a single interaction with Plaintiff. As for Plaintiff's GAF score of 60, this falls within the mild symptoms or impairments range, which the ALJ determined to be inconsistent with Dr. Walters's opinions. By giving these two reasons for according Dr. Walters's opinions little weight, the ALJ has provided a good explanation. Remand is not required on this ground.

---

[3] In his brief, Plaintiff identifies five opinions given by Dr. Walters. (Pl. Br. 14). However, the ALJ only declared that two of these opinions are due little weight. (AR 31).

## C. RFC Determination

Plaintiff asserts that the ALJ made errors in determining Plaintiff's physical and mental RFCs. The Court will first address Plaintiff's physical RFC. Plaintiff argues that the ALJ rejected all of the evidence in the record regarding his physical RFC and that, consequently, there was an evidentiary deficit that the ALJ improperly filled with his lay understanding. *See Suide v. Astrue*, 371 F. App'x. 684, 689-90 (7th Cir. 2010). However, an ALJ is not required to rely solely on medical opinions to determine the RFC. *Schmidt v. Astrue*, 496 F.3d at 845 (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians (citing *Diaz*, 55 F.3d at 306, n.2)). The final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Diaz*, 55 F.3d at 306, n.2.

The ALJ assigned Plaintiff a more restrictive physical RFC than the State agency medical consultants' opinions of medium level work ability. (AR 30). The ALJ also provided evidentiary support for this determination of light work ability. In rejecting the consultants' opinions, the ALJ considered Plaintiff's "many physical impairments," which include right shoulder osteoarthritis, back pain, and obesity. (AR 30). The ALJ also noted the 2011 clinical findings of slow gait, leg weakness, and decreased vibration in the feet and hands, (AR 28); a 2011 consultative examiner's report that Plaintiff had tenderness in his lumbar region and difficulty squatting but also a full range of motion and normal strength of the upper and lower extremities, normal lumbar range of motion, normal gait, the ability to heel/toe walk, and the ability to get on and off the examination table without difficulty, *Id.*; a pain specialist's observations of normal gait pattern and normal arm and leg strength, (AR 29); diagnostic imaging of Plaintiff's lumbar spine showing degenerative changes,

(AR 28); and Plaintiff's subjective testimony of consistent complaints of back pain, (AR 30). The ALJ found additional restrictions on Plaintiff, which elevated his limitation to light work exertion. *Id.* Regarding the specific limitation that Plaintiff cannot climb ladders and can occasionally climb ramps and stairs, the ALJ cited Plaintiff's osteoarthritis and history of right arm pain in combination with his back impairment. (*Id.*).

While the ALJ has given significant evidence to support his decision, the ALJ did not provide the required explanation of diagnostic imaging results in finding Plaintiff not significantly limited in his ability to bend, stoop, crouch, crawl, or reach. The ALJ did not totally reject the consultants' opinions, which found no such postural limitations to be warranted, (AR 283, 289), but there are diagnostic imaging results in the record that post-date the consultants' opinions and that go undiscussed in the ALJ's decision, (AR 325-26, 552-53). While an ALJ does not need to address every piece of evidence in the record, "an ALJ may not ignore an entire line of evidence that is contrary to [his] findings." *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). By not addressing these diagnostic imaging findings, the ALJ failed to build an accurate and logical bridge in support of his decision regarding Plaintiff's postural limitations. Independent of the errors in the credibility determination, remand is required on this ground.

The Court now turns to Plaintiff's alleged errors in the ALJ's mental RFC determination. Alleged mental impairments require the ALJ to use the "special technique," set forth in 20 C.F.R. §§ 404.1520a and 416.920a, at steps two and three of the evaluation process to determine whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations. *Craft*, 539 F.3d at 674; SSR 96-8p, 1996 WL 374184 (July 2, 1996). First, the ALJ determines whether a claimant has any medically determinable mental impairments by

evaluating the claimant's "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must document that finding of a medically determinable mental impairment and rate the degree of limitation in four broad "functional areas" known as the "B criteria": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Pepper*, 712 F.3d at 365 (citing § 404.1520a(c)(3); *Craft,* 539 F.3d at 674 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq.* )). Each assigned rating corresponds with a determination of the severity of the mental impairment. *Id*. (citing § 404.1520a(d)(1)). The ALJ must document use of the technique, incorporating the relevant findings and conclusions into the written decision. *Pepper*, 712 F.3d at 365 (citing § 404.1520a(e)(4)).

Plaintiff first argues that the ALJ did not explain how he determined that Plaintiff's restrictions in concentration, persistence, or pace were moderate. The only mental RFC assessment in the record, completed by Dr. Varghese, placed Plaintiff in the "marked" category. (AR 460). As discussed in the medical opinion section above, the ALJ's rejection of Dr. Varghese's opinion regarding concentration, persistence, or pace was proper, and the ALJ provided evidence from the record to support his finding of moderate limitation.

Next, Plaintiff asserts that the ALJ identified no evidentiary basis for Plaintiff's detailed mental RFC. This case is already being remanded on other issues, including issues with the credibility finding, and the new credibility determination may lead to changes in Plaintiff's mental RFC. However, the Court notes that Plaintiff is correct in his assertion that the ALJ improperly did not provide support for his specifications in the mental RFC that "the claimant is able to sustain attention/concentration for 2-hour periods at a time, and for eight hours in the workday on short, simple, and repetitive instructions" and "the claimant can use judgment in making work decisions

related to short, simple, and repetitive instructions." (AR 26). Plaintiff further contends that the ALJ should have addressed the specific evidence that Plaintiff is hyperverbal and has tangential thoughts, (AR 405), and also has delusional thoughts, (AR 309-10, 312, 358, 381, 386, 399), in determining Plaintiff's capability to sustain concentration and attention for two hours at a time. On remand, if the ALJ makes the same or a similar finding regarding Plaintiff's ability to sustain concentration and attention, the ALJ is directed to address this evidence.

Plaintiff asserts that the ALJ failed to explain his decision that Plaintiff could tolerate occasional interaction with coworkers and supervisors and his decision to not limit the content as well as the frequency of this contact. The ALJ wrote that "[d]ue to moderate deficits in social functioning arising from [psychotic/delusional disorder and anxiety], [Plaintiff] is limited to superficial interaction with the public and occasional contact with coworkers, and supervisors." (AR 32). In determining Plaintiff's level of social functioning, the ALJ addressed Plaintiff's testimony regarding social activities, the fact that he had never been dismissed from work for reasons related to interpersonal skills, his criminal history showing no significant arrests or incarcerations, and his reports of delusional beliefs regarding the FBI and political figures. (AR 24). The ALJ has presented an explanation for this limitation in Plaintiff's RFC, namely Plaintiff's moderate difficulties in social functioning, which the ALJ found "because while [Plaintiff] does socialize with family and friends, he appears to have a grandiose attitude toward others. (*Id.*). While this evidence does support the finding, it in not entirely clear which of the pieces of evidence from the social functioning determination were used to support the specific limitation. Instead of using the broader term of "moderate deficits in social functioning" and thereby attempting to incorporate by reference the

underlying evidence, the ALJ is directed, on remand, to discuss the specific pieces of evidence that support each limitation.

Finally, Plaintiff argues that the ALJ improperly failed to address Plaintiff's delusional thoughts in determining whether he could maintain regular work attendance and punctuality. The ALJ based his decision on the fact that there is insufficient evidence to show that Plaintiff would have difficulty in this area. The ALJ specifically considered that Plaintiff "has had no inpatient treatment for psychosis or delusions," which is proper in considering the disruption Plaintiff's delusions would cause to his work attendance. However, the ALJ also considered that Plaintiff "even refuses to take medications," which is improper without considering Plaintiff's explanation for refusal, as noted above. (AR 32). Once more, the Court directs the ALJ on remand to consider Plaintiff's explanation for noncompliance with treatment if the ALJ uses the noncompliance to support Plaintiff's ability to maintain regular work attendance and to be punctual.

### D. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe*, 425 F.3d at 356). As is evident from the discussion above, remand, not an immediate award of benefits, is required here.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 14], **REVERSES** the

final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 29th day of September, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT
